23-2426 SME Steel Contractors, Inc. v. Seismic Bracing Company, LLC  How could that statement possibly have caused you any damages? If it's literally false, we don't need to show that it actually harmed us. It creates a presumption. And that statement that they were tested and qualified, that was in the design manual. Did I read the record wrong, or is the report from the university that says that two of them failed also in the design manual? It is also in the design manual. So the evidence that you say contradicts their statement was also in the same manual you said that had the false statement? Correct, but the design manual is obviously a 90-page document. And on the first page where they have the critical language at issue here, that their patented methods have been tested and qualified for use in accordance with governing building codes, that language is literally false in the sense that not all their braces had passed. Which they told people in the other parts of the document. Buried at the end of the document, if somebody were to look past the initial statement, the initial statement that says our patented methods have been tested and qualified for use in accordance with governing building codes, and they had ignored that statement and then looked into the remainder of the manual, then yes, there is a statement. You can see what the outcome is. But they claimed in the prefatory language a statement that's false. Okay, I think we're out of time. We'll give you two minutes to rebuttal. Mr. Swanson. Good morning, Your Honors. May it please the Court, my name is Scott Swanson for Appellee's Seismic Bracing Company in Andrew Hinchman. This case focuses on the district court's correct claim construction and correct dismissal of each of the claims of patent infringement under the Lanham Act, the copyright law, and the state unfair competition claims. I would like to begin addressing the appellant's argument regarding figure four of the patent. I don't believe that this figure was previously argued before their reply, but if it was, it's fine. We have a problem. This is sounding like claim construction rather than plain and ordinary meaning. Go ahead. Okay. Well, I think the district court's claim construction was correct, and I agree we haven't. argued for a new claim construction. The main purpose was that I was going to point out that in depicting or in describing the bearing members in figure four, at appendix 0158, the specification of the 680 patent states that yet another air gap is positioned between the bearing members. It doesn't say it's positioned between the core and the bearing members as they're advocating in describing their figure. Well, if this wasn't raised before, we don't even have an assessment by the lower court about whether figure four, which is an alternative embodiment, is even meant to be encompassed by claim one, right? I agree. Everything in the specification illustrates that there is an air gap that extends between the bearing member and the core. And the claims state that this, the claims either use form between or position between. Now, a plain and ordinary meaning of the terminology form between, when it states that the core and the bearing member are separated apart such that the air gap is formed between them, to me, this implies functional language that it has to be spaced apart to be formed. And my client's device only has cardboard in between the core and the bearing member. How do you respond to opposing counsel's argument that the air gap is within the cardboard and it's still serving the intended purpose? Well, A, they have not brought up a doctrine of equivalence argument. And B, we don't believe this literally infringes because it states that the air gap is formed between the core and the bearing member or that they are positioned apart, that the core and the bearing member are adjacent. And the air gap is positioned between them. And in neither instance is cardboard spanning between the bearing member and the core an air gap. And I think that the appellant specifically addressed this in the prosecution history in distinguishing the Takeuchi patent and stating that the core and the bearing member are adjacent. And that an air gap plus a film would defeat the purpose of the air gap and a film. Thus, if the air gap does not span the distance between these, it does not meet the requirements of the client language. Turning to the Lanham Act claims... They're standing for those claims, isn't there? Wasn't that a mistake to break this into standing as opposed to just staying on the merits? Yes, I think Lexmark states at the last paragraph of the decision that to prove standing, they have to make a claim in the court. They have to make a complaint, provide standing to proceed, and then at the end they have to produce evidence. So I think what it is is there should be evidence here of damages, and there is no evidence of damages. Even if we disagreed about standing, we could affirm on the basis that no reasonable jury could find that there were damages? Correct, Your Honor. Yes, this is a Rule 56 decision as opposed to Rule 12. Looking at the statements, my client was the chief engineer for the appellants for multiple years. He was involved in all of these cases, or in all of these projects. It doesn't ever state that SBC itself did any of these projects. None of these are false. Well, they're only contending that two of them are false, right? Correct. The production capacity, my client subcontracted out steel fabricators, but the braces were still being produced by his company and delivered by his company under his company's name. Thus, they were being produced, and he had, as the record, he had the capacity through using these independent contractors to produce, in essence, as many braces as he wanted to by hiring more third parties. There isn't any evidence at all on the record that these statements were false. And turning to the claim that the braces did not pass inspection, three of the brace sizes had passed the university testing, and thus my client was fully qualified to produce those. The two smaller sized braces did not pass. I don't think this is on the record, but they have now. But they were qualified to produce the three braces, and this was all set forth, as Judge Hall stated, at the actual testing results that were provided in the manual. There is no evidence, no facts on the record, that anyone considered any of these allegedly false allegations in giving my client any projects or awarding him any bids. And thus, they haven't been harmed. The appellants haven't been harmed. What about, kind of following up on the question I asked opposing counsel, I understand the statements and arguments that are being made with respect to literal falsity, but what about something being misleading in terms of the way that it was being provided? Could there have been harm associated with misleading statements? The appellants would have had to prove harm, is my reading of the case law, and they didn't prove any harm because they didn't provide any evidence of anyone actually using any of these statements to award any bid. So what do you understand the law to be? If there's a two competitor market, what do you have to show in addition to that to get a presumption of injury? It would have to show literal falsity and prove the two competitor market. And what are you basing that showing on? Where exactly in the case law are you basing that as the test that you're saying is applicable? I believe that's in the Vitamins case. Where? That I don't recall off the top of my head. I apologize. Do you have the case with you? On my computer. Do you recall any place where Vitamins online says you need to show literal falsity? I believe it stated it was either literal falsity or an intentional intent to deceive. Has intentionality been argued here? I don't believe so. Wasn't intentionality argued both at the district court and here? You don't think it was? I think they argued that intentionality was presumed because it was the only way they thought he could get a job. But I don't think there was ever any citation to any evidence of intentionality. What I read Vitamins as saying at 1239 is that there's a presumption of injury in it. To competitor market where there's deliberate deception. That sounds correct, Your Honor. I thought the suggestion here was that there was deliberate deception because of some testimony that they knew about what the customers needed or something like that. I believe that was their argument. That sounds correct. An engineer operating in the same field and understanding what competitors want and making statements that are not false is not misleading. It's not intentional? I would say it's not intentional misleading. Intentional statements. So at least in terms of the briefing before us and the blue brief beginning around page 69, there's definitely argument about intent and that these misrepresentations were intentional. I see that at least on 69 through 70. Do you have the briefs with you? Yes. But the evidence of that is entirely based on the knowledge of customer requirements. Could you repeat? The argument of intent is based on the knowledge of customer requirements, isn't it? I believe intent is based on Well, we can ask. Do you agree that the district court did not reach the merits of the false advertising claim? The district court stated that the claims were ambiguous at best and thus did not rule them false or not false. It stated that there is no standing because the claims were ambiguous. It seems to be very confusing in the Tenth Circuit whether there's a difference between the standing test and the I agree, your honor. It's very confusing. Okay, anything further? I believe that really that test boils down to that none of these statements were false or misleading in that the client had done the stuff that was listed in the design manual. Okay, thank you. Mr. Eichenberger Thank you, your honor. Quickly, so the theory of literal of falsity rests on those two statements, but you're also saying it's sufficient if we prove intent Correct, your honor. And intent is established because of knowledge of customer requirements? Is that right? Correct, your honor. So what we specifically point to is these ideas of reliability deliverability, successful installs. How does knowledge of customer requirements show intent? Because the purpose of the design manual is sent to engineers. The engineers then qualify the BRBs for use on a project. When determining whether a device will be successful or useful in the industry it's whether it's reliable. It's whether you can deliver. And in order, for example in our brief, we mentioned if you went to a potential customer and you said I'm a company of one. I've never built a single brace before that's been sold. Those type of statements go directly to the concerns that the engineers reviewing the design manual would have. They'd have concerns about reliability deliverability, durability. And so by framing his capabilities both in the sense of making literally false statements and also making himself appear like the appellants by characterizing his projects as their projects, what he's essentially doing is capitalizing on what the customer or what the engineer that's going to approve the project is looking for exactly. With respect to your question on claim construction, we're not asking for any additional construction. What we're simply asking for is that the words formed between and positioned between be given their plain and ordinary meaning. Based off the district court's erroneous construction, it was narrowly limited to the specific scenario where it spans the entire distance between. There is no support in the specification that requires that specifically. Spans the distance between is nowhere to be found in the specification. For that reason, the court should reverse on the questions. Okay. Thank you. Thank both counsel.